IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BETTY PATTERSON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 13-0109-WS-B |
| ) | |
| SCOTT WALDEN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter comes before the Court on Motions to Dismiss (docs. 9, 11 & 13) filed by defendants, Scott Walden, Jason Dean, and City of Atmore. All three Motions have been briefed and are ripe for disposition.

**I.     Background.**

Plaintiffs, Betty Patterson and Dewayne Russell, as Administrators of the Estate of Adam Dewayne Patterson ("Patterson"), filed suit in federal court against four named defendants, including the City of Atmore (the "City"); Scott Walden ("Officer Walden"), who at all relevant times was an Atmore police officer; Jason Dean ("Chief Dean"), who at all relevant times was Atmore's Chief of Police; and Willie Lee Patrick.[1] The Complaint specifies that Chief Dean "is sued in his individual capacity" (doc. 1, ¶ 4), but is silent as to the capacity or capacities in which Officer Walden is sued.

According to the well-pleaded facts in the Complaint (which are accepted as true for purposes of the Motions to Dismiss), on or about March 6, 2011, Officer Walden observed defendant Patrick operating a motor vehicle at a speed in excess of the posted limit. (Doc. 1, ¶ 7.) Officer Walden initiated a pursuit, and "began to chase [Patrick's vehicle] at a high rate of

---

[1]     By all appearances, defendant Patrick has not been served with process. (*See* doc. 18.) The 120-day service deadline provided by Rule 4(m), Fed.R.Civ.P., will expire on July 3, 2013; therefore, plaintiffs are expected to proceed diligently to locate and serve Patrick, assuming they have not done so already, and to file return of service promptly thereafter.

speed … for several blocks." (*Id.*)  The Complaint alleges that Officer Walden was "following closely behind Defendant Patrick's automobile at a high rate of speed." (*Id.*)  As Patrick's vehicle approached a railroad crossing atop an elevated slope, Officer Walden's patrol vehicle struck Patrick's car from behind, sending it airborne and causing Patrick's vehicle to "flip[] over and land[] in a ditch." (*Id.*)  Plaintiffs' decedent, Patterson, "was killed as a result of the accident."  (*Id.*)[2]

On the strength of these limited facts, plaintiffs assert the following causes of action:  (i) a claim against Officer Walden pursuant to 42 U.S.C. § 1983, alleging that this defendant's "use of excessive force … was unreasonable and was a violation of Patterson's Fourth, Fifth and Fourteenth Amendment rights" (doc. 1, ¶ 10); (ii) a wrongful death claim against Officer Walden under Alabama law, alleging that this defendant's "negligence or wantonness" proximately caused Patterson's death (*id.*, ¶ 12); (iii) a state-law false arrest claim against Officer Walden; (iv) a claim against Officer Walden for the Alabama tort of outrage; (v) a § 1983 claim against Chief Dean, alleging that his "deliberate indifference to the hiring, lack of training and supervision of [Officer] Walden … caused … Patterson to be deprived of his Fourth Amendment right not to have excessive force used against him, and his Fifth and Fourteenth Amendment right to due process, the equal protection of the law, and not to be subjected to the outrageous conduct of a police officer" (*id.*, ¶ 18); and (vi) a § 1983 claim against the City, alleging that Chief Dean's acts and omissions "represent[] the official policy practice or custom of the City," giving rise to municipal liability (*id.,* ¶ 20).[3]  Plaintiffs demand judgment of $25 million as to each of these asserted causes of action, plus interest, costs and attorney's fees.

The municipal and law enforcement defendants have now moved to dismiss most of the claims and causes of action asserted by plaintiffs, on the grounds that they fail to state a claim on which relief can be granted.

---

[2] The Complaint contains no facts alleging where Patterson was or how he came to be killed in the accident.  In response to the Rule 12(b)(6) Motions, however, plaintiffs clarify that Patterson was a passenger in Patrick's vehicle.  (Doc. 26, at 2.)

[3] An unnumbered seventh count of the Complaint is a wrongful death claim against defendant Willie Lee Patrick.  That Count VII is beyond the scope of this Order, inasmuch as Patrick has not filed a Rule 12(b)(6) Motion and, indeed, has not been served with process.

II.     Analysis.

   A.     *Legal Standard for Rule 12(b)(6) Motions.*

To withstand Rule 12(b)(6) scrutiny, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As the Eleventh Circuit has explained, these principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).

Of course, in reviewing Rule 12(b)(6) motions, federal courts must "accept[] the facts alleged in the complaint as true, [and] draw[] all reasonable inferences in the plaintiff's favor." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010); *see also American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007) ("a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true when it considers a motion to dismiss a complaint under Rule 12(b)(6)"). That said, the obligation to accept well-pleaded facts as true does not extend to conclusory allegations or mere legal conclusions. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("if allegations are indeed more conclusory than factual, then the court does not have to assume their truth"); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth.").

   B.     *Defendant Officer Walden's Motion to Dismiss.*

As noted, plaintiffs' claims against Officer Walden consist of the following: (i) a § 1983 claim, alleging "excessive force in striking Defendant Patrick's vehicle," in violation of "Patterson's Fourth, Fifth and Fourteenth Amendment rights" (doc. 1, ¶ 10) (Count I); (ii) a

state-law wrongful death claim (Count II); (iii) a state-law false arrest claim (Count III); and (iv) a state-law outrage claim (Count IV).  Although the Complaint does not delineate the capacity in which Officer Walden is being sued, plaintiffs' opposition brief states, "In this action, Plaintiffs are suing Defendant Walden in both his official and individual capacity."  (Doc. 26, at 2.)  Officer Walden has moved for dismissal of the official-capacity claims, as well as portions of Count I and the entirety of Counts III and IV.

With regard to the official-capacity claims, Officer Walden's only argument is that they "are actually claims against Atmore itself, which means that they are due to be dismissed as to Officer Walden."  (Doc. 10, at 2.)  It is well settled that "[a] claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009); *see also Penley v. Eslinger*, 605 F.3d 843, 855 (11th Cir. 2010) ("Official-capacity suits … generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted).  From that principle, however, it does not follow that official-capacity suits against an individual fail to state a claim and must be dismissed.  To the contrary, official-capacity claims nominally raised against individual government officials are routinely litigated to conclusion on the merits as the functional equivalent of a direct suit against the municipality itself.[4]  Nothing in the cases cited by Officer Walden supports his apparent contention that official-capacity suits against individual government officials are *per se* barred for failure to state a claim.[5]  Defendant's Motion to Dismiss the official-capacity claims against Officer Walden on this basis is not well taken.

---

[4]  Defendants' confusion on this point is underscored by their recognition that "an official-capacity suit is, **in all respects other than name**, to be treated as a single suit against the entity itself."  (Doc. 28, at 2 (emphasis added).)  This is a correct statement of law.  It also shows that it is permissible for a plaintiff to proceed nominally against an individual defendant in his official capacity, even though the suit is treated (despite its name) as a suit against the entity.  This is exactly what plaintiffs are doing here, and is an acceptable way of structuring claims.

[5]  To be sure, movant cites a pair of district-court opinions for the notion that official-capacity claims against individual government officials cannot be maintained.  (*See* doc. 10, at 3.)  Review of those cases reveals that movant's reliance is misplaced.  In *McReynolds ex rel. D.M. v. Alabama Dep't of Youth Services*, 426 F. Supp.2d 1247 (M.D. Ala. 2006), the court did dismiss official-capacity claims against the individual defendants, but only because claims against the entity itself were barred by Eleventh Amendment immunity, such that the official-capacity claims against individual defendants failed for the same reason. *Id.* at 1253.  Contrary to movant's suggestion, the *McReynolds* court did not hold that official-capacity claims against (Continued)

Next, the Court turns to Counts III and IV (state-law torts of false arrest and outrage), which Officer Walden has moved to dismiss on abatement grounds.  Under Alabama law, unfiled state-law tort claims do not survive the death of the claimant.  *See, e.g., Nationwide Mut. Ins. Co. v. Wood*, --- So.3d ----, 2013 WL 646468, *2 (Ala. Feb. 22, 2013) ("Under the Alabama survival statute, § 6-5-462, Ala. Code 1975, an unfiled claim sounding in tort will not survive the death of the person with the claim.") (citations omitted).[6]  In other words, when Patterson died on March 6, 2011 (almost two years to the day before this lawsuit commenced), his then-unfiled tort claims for false arrest and outrage were extinguished, as a matter of law.  As Officer Walden correctly argues (with no response or disagreement from plaintiffs), black-letter Alabama law precludes the estate's administrators from initiating legal proceedings on such abated tort claims after Patterson's death.  The Motion to Dismiss is therefore **granted** as to Counts III and IV, which fail to state claims upon which relief can be granted.

The remaining issue raised by Officer Walden's Rule 12(b)(6) Motion is whether Count I (Section 1983 claim under the Fourth, Fifth and Fourteenth Amendments) states a cognizable cause of action.  Officer Walden seeks dismissal of the Fifth and Fourteenth Amendment aspects of Count I.[7]  With respect to the Fifth Amendment, defendant argues (again, with no opposition

---

individual defendants always, necessarily are not cognizable.  The same is true of *Besselaar v. Siegelman*, 2001 WL 936196, *8-9 (S.D. Ala. May 2, 2001).  Unlike in *McReynolds* and *Besselaar*, Officer Walden has not argued that plaintiffs' claims against the City of Atmore are subject to an immunity that likewise forbids the assertion of official-capacity claims against him; instead, his position is apparently that official-capacity claims always fail as a matter of course.  Such a contention is at odds with the law.

[6]     *See also Continental Nat. Indem. Co. v. Fields*, 926 So.2d 1033, 1037 (Ala. 2005) (under Alabama law, "[a]s a general rule, causes of action in tort do not survive in favor of the personal representative of the deceased"); *Bassie v. Obstetrics & Gynecology Associates of Northwest Alabama, P.C.*, 828 So.2d 280, 282 (Ala. 2002) ("In Alabama, a deceased's unfiled tort claims do not survive the death of the putative plaintiff."); *Illinois Cent. Gulf R. Co. v. Price*, 539 So.2d 202, 203-04 (Ala. 1988) ("Under Alabama law, a cause of action sounding in tort, as opposed to an action, for personal injuries does not survive in favor of a personal representative.").

[7]     Defendant does not contend that the Complaint fails to state a § 1983 claim of excessive force under the Fourth Amendment.  To the contrary, Officer Walden concedes that "because the plaintiffs' claim in this case is premised on the use of excessive force, it is properly analyzed under only the Fourth … Amendment." (Doc. 10, at 8 n.3.)  At least at the pleadings (Continued)

or response from plaintiffs) that it has no application here because the due process component of the Fifth Amendment applies only to the federal government, whereas Officer Walden was a municipal employee. Settled law supports this argument. *See, e.g., Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1041 (11th Cir. 1989) ("The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law."); *Knoetze v. United States, Dep't of State*, 634 F.2d 207, 211 (5th Cir. 1981) ("fifth amendment protection attaches only when the federal government seeks to deny a liberty or property interest"); *Jordan v. Mosley*, 2008 WL 3974318, *2 n.5 (11th Cir. Aug. 28, 2008) ("the Fifth Amendment applies only to Federal, not state, acts"). Insofar, then, as Count I is predicated on Fifth Amendment due-process principles, it fails to state a cognizable claim and is properly **dismissed**.

Officer Walden also seeks dismissal of Count I to the extent that it alleges a Fourteenth Amendment violation. Although the Complaint does not specify the nature of the alleged deprivation, plaintiffs' brief clarifies that they are proceeding under the substantive due process component of the Fourteenth Amendment. (Doc. 26, at 2.) As the Supreme Court has explained, "the substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citation and internal quotation marks omitted); *see also White v. Polk County*, 2006 WL 3419583, *1 (11th Cir. Nov. 28, 2006) (similar). In *Lewis*, the Supreme Court held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Lewis*, 523 U.S. at 854.

---

stage, this concession is prudent. *See generally Beshers v. Harrison*, 495 F.3d 1260, 1265-68 (11th Cir. 2007) (discussing applicable legal standards for assessing whether a seizure has occurred and whether any such seizure was unreasonable, all in the context of a high-speed pursuit). Therefore, this case will proceed as to Count I insofar as it is rooted in a theory of excessive force in violation of the Fourth Amendment.

Succinctly put, the question posed by Officer Walden's Rule 12(b)(6) Motion is whether the Complaint sets forth sufficient factual allegations to state a plausible Fourteenth Amendment claim. The Court answers this question in the affirmative. The well-pleaded facts show that Officer Walden initiated a high-speed pursuit of the vehicle in which Patterson was riding, on nothing more substantial than a minor traffic infraction; that Officer Walden followed the vehicle very closely at high speed for several blocks; and that Officer Walden rear-ended the vehicle as it reached a railroad crossing at the top of an elevated slope, with sufficient force and severity that he caused the vehicle to go airborne, flip over, and crash into a ditch. From these facts, a plausible claim is made that Officer Walden acted with more than mere negligence or recklessness, but instead had a purpose or intent to harm the suspects physically by ramming their vehicle at a particularly vulnerable location on the roadway. This claim can (and no doubt will) be revisited at summary judgment, but for now the Complaint pleads sufficient allegations of conscience-shocking behavior by Officer Walden to state a plausible Fourteenth Amendment substantive due process claim, and therefore satisfies the *Twombly* threshold. Officer Walden's Motion to Dismiss is **denied** insofar as it seeks dismissal of the Fourteenth Amendment substantive due process portion of Count I.

### C. *Defendant Chief Dean's Motion to Dismiss.*

Recall that Count V of the Complaint alleges a § 1983 claim against Chief Dean, solely in his individual capacity. To support this claim, the Complaint alleges that Chief Dean "was responsible for the hiring, training, supervision, direction and conduct of the police officers and administrative staff" of the City of Atmore Police Department at all material times. (Doc. 1, ¶ 4.) Count V also alleges in conclusory fashion that Chief Dean's "deliberate indifference to the hiring, lack of training and supervision of [Officer Walden] directly and proximately caused [Patterson] to be deprived" of rights guaranteed under the Fourth, Fifth and Fourteenth Amendments. (*Id.*, ¶ 8.) In his Rule 12(b)(6) Motion, Chief Dean correctly asserts that these allegations are inadequate to satisfy *Twombly* / *Iqbal* pleading standards.

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007) (quotation omitted). Nor can a supervisor be held liable under § 1983 for mere negligence in the training or supervision of his subordinates. *See, e.g., Greason v. Kemp*, 891 F.2d 829, 836-37 (11th Cir. 1990). Indeed, the law is clear that a supervisor may not

be held liable under § 1983 unless "the supervisor personally participates in the alleged constitutional violation or … there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (citation omitted).  A causal connection may be established in circumstances where (i) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation;" (ii) the supervisor's "improper custom or policy … resulted in deliberate indifference to constitutional rights;" or (iii) "the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Gonzalez v. Reno*, 325 F.3d 1228, 1234-35 (11th Cir. 2003) (citations and internal quotation marks omitted).

In other words, "[t]o state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." *Barr v. Gee*, 2011 WL 3585815, *8 (11th Cir. Aug. 16, 2011) (finding that complaint failed to state a claim against supervisor where it did not allege facts supporting plausible inference of personal involvement in misconduct, or history of widespread abuse that had put supervisor on notice of deprivation, and "failed to identify the purported policies or customs by which [supervisor] allegedly infringed on his rights").[8]  "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Mann*, 588 F.3d at 1308 (citation omitted).

---

[8] *See also Smith v. Owens*, 2013 WL 2357628, *3 (S.D. Ga. May 29, 2013) (dismissing § 1983 claims against supervisors where complaint "makes nothing more than a general allegation that Defendants violated his constitutional rights and that there existed an official policy which motivated the actions about which he complains"); *Hill v. Lee County Sheriff's Office*, 2012 WL 4356818, *8 (M.D. Fla. Sept. 24, 2012) (granting law enforcement supervisors' Rule 12(b)(6) motion where complaint did not plead facts that supervisors were personally involved in subject arrest, did not contain allegations inferring the existence of a custom or policy, lacked facts supporting inference that supervisors directed actions or failed to prevent them, and made no allegations of history of widespread abuse); *Johnson v. Alabama Community College System*, 2011 WL 4479007, *2 (M.D. Ala. Sept. 27, 2011) (applying same factors to claim of supervisory liability under § 1983).

As Chief Dean correctly observes, the Complaint's allegations against him rest on generic labels and legal conclusions, not specific facts. Although Count V is couched in terms of "deliberate indifference to the hiring, lack of training and supervision" of Officer Walden, the Complaint is devoid of facts that might plausibly support such an allegation. There are no facts pleaded that, for example, identify a custom or policy that resulted in deliberate indifference to Patterson's constitutional rights.[9] The Complaint likewise lacks factual allegations that Chief Dean directed Officer Walden to pursue and ram Patterson's vehicle, or that he knowingly failed to prevent Officer Walden from doing so. And the Complaint does not include a single fact suggesting the existence of a widespread pattern of excessive force or substantive due process violations by Atmore police officers to which Chief Dean turned a blind eye.

Ultimately, the Complaint's conclusory, formulaic use of terms like "deliberate indifference" and "lack of training and supervision" falls well short of establishing the requisite plausibility for *Twombly* / *Iqbal* purposes. Plaintiffs have not pleaded specific facts sufficient to raise their right to relief against Chief Dean above the speculative level. Accordingly, Chief Dean's Rule 12(b)(6) Motion is due to be **granted**.[10]

---

[9] Even if the Complaint did identify such a custom or policy by Chief Dean, such custom or policy would only amount to deliberate indifference if Chief Dean made a "deliberate" or "conscious" choice not to train officers. *See, e.g., Rocker v. City of Ocala, Fla.*, 2009 WL 4365226, *2 (11th Cir. Dec. 3, 2009). "As the Supreme Court has stated, deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Goebert v. Lee County*, 510 F.3d 1312, 1332 (11th Cir. 2007) (citation and internal quotation marks omitted). No facts are alleged that might plausibly support a claim that Chief Dean was deliberately indifferent in this regard.

[10] In their opposition brief, plaintiffs insist that Count V properly pleads a § 1983 claim for supervisory liability because (i) the facts concerning Officer Walden's conduct "inferentially show[] he lacked training and supervision," and (ii) "Defendant Dean's own personal action in failing to train and supervise Defendant Walden" caused the constitutional deprivation. (Doc. 24, at 2.) But such allegations fall well short of the requisite legal threshold for § 1983 liability. As the aforementioned cases illustrate, far more is needed to hold a supervisor liable in a § 1983 action than bare allegations that the supervisor who was vested with authority to train and supervise failed to train or supervise the actor who engaged in constitutional misconduct. Yet that is all we have here. Plaintiffs have pleaded no more facts than that Chief Dean was responsible for training and supervising Officer Walden, and that more training and supervision of Officer Walden could have prevented Patterson's death. This does not satisfy minimum pleading requirements for § 1983 claims of supervisory liability.

### D.        *Defendant City of Atmore's Motion to Dismiss.*

In Count VI of the Complaint, plaintiffs purport to allege a § 1983 claim against the City of Atmore.  The only factual allegations pertaining to the claim against the City are that Chief Dean's actions "may fairly be said to represent official policy for [the City] in matters of criminal investigation and law enforcement, and his edicts or acts … of allowing city officials and police officers to violate the constitutional rights of citizens, and further, not being disciplined for said conduct, represents the official policy, practice or custom of the City."  (Doc. 1, ¶ 1.)  As the City notes in its Motion to Dismiss, the obvious *Twombly* problem with this claim is that the Complaint contains no specific factual allegations that Chief Dean or anyone else ever "allowed" police officers to violate citizens' constitutional rights, or that they failed to take appropriate disciplinary action.  This kind of conclusory allegation does not satisfy minimum pleading standards.

Moreover, insofar as Count VI appears to be rooted in a failure to train theory, the Complaint's allegations do not state a plausible claim for § 1983 municipal liability on that basis.  The Eleventh Circuit has explained that "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. … To establish a municipality's 'deliberate indifference,' a plaintiff must put forward some evidence that the municipality was aware of the need to train or supervise its employees in a particular area."  *American Federation of Labor and Congress of Indus. Organizations v. City of Miami, FL*, 637 F.3d 1178, 1188-89 (11th Cir. 2011) (citations omitted); *see also Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1145 (11th Cir. 2007) ("In order to sustain her claim that her injury was the result of improper training, Skop was required to bring forth some evidence of a pattern of improper training …, and she must show that Atlanta was aware of the deficiencies in the program.") (citations and internal marks omitted).  Stated differently, "[m]unicipal policy or custom may include a failure to provide adequate training if the deficiency evidences a deliberate indifference to the rights of its inhabitants."  *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) (quotation omitted).  In order to establish deliberate indifference, the "plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."  *Id.* (quotation omitted).

Therein lies the problem. The Complaint is entirely lacking in facts supporting an inference that the City of Atmore was aware of a need to train and/or supervise its police officers in the areas of high-speed pursuits or excessive force, much less that the City made a deliberate choice not to do so. Instead, plaintiffs' § 1983 claims against the City rest on nothing more substantial than their conclusory contentions that Chief Dean makes official policy for the City and he engaged in edicts and acts that allowed police officers to violate citizens' constitutional rights without adverse repercussions. That is not good enough. *See Barr*, 2011 WL 3585815, at *7 (dismissing § 1983 failure-to-train claim against municipality where complaint "did not allege facts supporting a plausible inference either that the County was on notice beforehand of a need to train in this area, or that the County made a deliberate choice not to do so").[11]

For these reasons, the City's Motion to Dismiss Count VI of the Complaint is well taken, and is due to be **granted**.[12]

---

[11]  *See also Flowers v. Patrick*, 869 F. Supp.2d 1331, 1336 (M.D. Ala. 2012) ("[F]or a municipality to face liability, the constitutional violation a plaintiff complains of must be a 'plainly obvious' consequence of hiring the officer. … And on top of that, *Twombly* requires more than legal conclusions; the plaintiff must allege *facts* sufficient to give rise to liability.") (citations omitted); *Harvey v. City of Stuart*, 2008 WL 4605926, *1 (11th Cir. Oct. 17, 2008) ("Harvey failed to identify any policy or custom that caused a constitutional violation, and his vague and conclusory allegations were insufficient to support the complaint."); *Cooper v. City of Starke, Fla.*, 2011 WL 1100142, *8 (M.D. Fla. Mar. 23, 2011) ("Plaintiffs' boilerplate and conclusory allegations of municipal policy or practice – devoid of factual development – are insufficient to state a § 1983 claim. Plaintiffs fail to identify any *actual* policies or decision makers and, in describing only the single incident of force involving Plaintiffs, fail to offer any facts to support the existence of a widespread custom," as required under *Twombly* / *Iqbal*).

[12]  As the City correctly points out, this same reasoning requires the dismissal of plaintiff's official-capacity claims against Officer Walden in Count I. Recall that "[a] claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual." *Mann*, 588 F.3d at 1309. Thus, plaintiffs' claims against Officer Walden in his official capacity are the functional equivalent of claims against the City of Atmore. Again, however, the City cannot be held liable under § 1983 for the alleged transgressions of Officer Walden (its employee) on a theory of *respondeat superior* or vicarious liability. "Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). For the same reasons discussed with respect to Count VI, the Complaint does not contain sufficient factual allegations to state a plausible claim that the City had a custom or policy that constituted deliberate indifference to Patterson's constitutional rights. Therefore, the official-capacity claim (Continued)

**III.    Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Defendant Officer Walden's Motion to Dismiss (doc. 9) is **granted in part**, and **denied in part**.  The portion of Count I predicated on a Fifth Amendment violation, and Counts III and IV in their entirety, are **dismissed with prejudice**;

2. Defendant Chief Dean's Motion to Dismiss (doc. 11) is **granted**.  Count V is **dismissed without prejudice**;

3. Defendant City of Atmore's Motion to Dismiss (doc. 13) is **granted**.  Count VI and the official-capacity claim nominally asserted against Officer Walden in Count I are **dismissed without prejudice**.  The official-capacity claim nominally asserted against Officer Walden in Count II is **dismissed with prejudice**;

4. In light of the foregoing rulings, the only remaining claims are the portion of Count I alleging § 1983 liability against Officer Walden in his individual capacity for violation of the Fourth Amendment and the substantive due process component of the Fourteenth Amendment; the wrongful death claim in Count II asserted against Officer Walden in his individual capacity; and Count VII, the wrongful death claim against defendant Willie Lee Patrick;

5. Officer Walden is **ordered** to file an Answer on or before **July 2, 2013**.

DONE and ORDERED this 18th day of June, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

against Officer Walden in Count I is properly **dismissed**.  As for the official-capacity claim against Officer Walden in Count II (state-law claim for wrongful death), the City persuasively argues (with no rebuttal or response from plaintiffs) that this claim is precluded by plaintiffs' noncompliance with the statutory requirement that "[c]laims for damages growing out of torts shall be presented [to the municipal clerk] within six months from the accrual thereof or shall be barred."  Ala. Code § 11-47-23.  Inasmuch as it is undisputed that plaintiffs here did not satisfy their presentment obligations under § 11-47-23, the official-capacity claim against Officer Walden in Count II (which, again, is the functional equivalent of a direct claim against the City) is statutorily barred, and is therefore properly **dismissed** on the City's Rule 12(b)(6) Motion.